UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DEREK SINCERE BLACK WOLF CRYER

Plaintiff,

CIVIL ACTION

NO. 1:05-cv-11289

v.

KATHLEEN DENNEHY, MICHAEL THOMPSON, CAROL MICI, GREG McCANN, TINA RANNO, MAE ROBINSON, GREG POLADIAN, TOM LAVELLE, WILLIAM TAYLOR

Defendants,

"Ex Parte is Considered"

Plaintiffs Opposition Motion to Dismiss Defendants Motion to Dismiss

Plaintiff request this Honorable Court to Dismiss Defendants Motion to dismiss According to the facts set forth in Plaintiffs Memorandum of Law and Supporting Documents attached thereto pursuant to Local Rule 7.1 (B) (2).

Respectfully Submitted,

Derek Sincere Black Wolf Cryer, Pro Se
Derek Sincere Black Wolf Cryer, Pro Se
MCI Shirley Medium
P.O. Box 1218 - Harvard Road
Shirley, MA. 01464

DATE: November 30, 2006

CC: Christa Rubin
File / 11-30-06

United States District Court
District of Massachusetts

Derek Steven Black Wolf Cryer, Pro Se

v.

Kathleen Dennehy, et al

Civil Action
No: 1:05-cv-11289

Plaintiff's Facts, Memorandum of Law
And Supporting Documents in Opposition
To Defendants Motion to Dismiss

Pro se Plaintiff filed Complaint under the Religious Freedom Restoration Act (R.F.R.A.) 42 U.S.C. § 2000bb and the American Indian Religious Freedom Act (A.I.R.F.A.) in which the Honorable Court Justice Lindsay Dismissed in His August 4, 2005 Memorandum and Order (see "Exh. 1" attached), and allowed Plaintiff's Claims to proceed under the Religious Land Use and Institutionalized Persons Act (R.L.U.I.P.A.) 42 U.S.C. § 2000cc. Further, the Complaint was filed under the 1st and 14th Amendment Rights under the U.S. Constitution, under 42 U.S.C. §1983, 42 U.S.C. §1996, as well as under the Massachusetts State Laws and Constitution (see "Exh. 2", Complaint at preliminary statement attached).

"Final, the Defendants assert that the Plaintiff did not exhaust His administrative remedies ~~because of failure~~ because of failing to submit an informal request to the "Religious Services Review Committee" (R.S.R.C.) before filing suit. In Defendants Motion to Dismiss (see attached "Exh. 3", Pg 6, last Para., 1st Sentence) its clear that the prison has a set Grievance Policy (103 CMR 491.00) and system which allows prisoners to file grievances and grievance appeals which is the main purpose of satisfying the Prison Litigation Reform Act, 42 § 1997e. The Defendants do not dispute or contend that the Plaintiff properly exhausted all His administrative remedies through the prisons grievance procedure. In Santos v. Hauck 242 F Supp 2d 257 (W.D.N.Y. 2003) the Court dismissed the complaint without prejudice because the Plaintiff, although He filed the initial grievance, He did not file an appeal to that denied grievance. In the present case the Plaintiff (Cryer) did file both grievances and grievance appeals. So instead of arguing that Plaintiff didn't exhaust the Administrative Grievance Procedure by not

either filing a grievance or filing a grievance appeal, the Defendants ask this Court to Dismiss based on "a Separate Administrative review procedure" that the Defendants "developed" in which Plaintiff didn't "exhaust Administrative Remedies". This second "Separate Administrative Review Procedure" as stated in [Exh. 3 last paragraph] is "<u>In addition</u>" to the Inmate Grievance Policy" and is Known as the Religious Services Review Committee (R.S.R.C.). In Abney v. Nassau 237 F.Supp 2d 278, (E.D.N.Y. 2002) at 283 the Court states, ["In view of the fact that Nassau County has chosen to fashion its own grievance procedure (which it is free to do), it is disingenuous for the Defendants to argue that a single provision of a different procedure should be grafted on to the Nassau County Procedure when it suits the County's litigation position"]. The R.S.R.C. is not a Committee within the institution, nor does it conduct interviews with prisoners to hear the prisoners request. Again and Furthermore, the Defendants, for the purposes of the Prison Litigation Reform Act (PL.R.A), 42 §1997e, rather than argue that Plaintiff didn't exhaust the set administrative grievance procedures, request of this Court to Substitute or Eliminate the set grievance procedure exhaustion required by the PL.R.A. (see also Exh. 4, MGLA 127 §38E & §38F attached) and replace it with a Second "Separate Administrative Review Procedure", the R.S.R.C.. It seems that the Defendants, like in Abney" are using the R.S.R.C. (Defense) "to suit its litigation purpose". In Porter v. Nussle 122 S.Ct. 983 (2002) at 985, Justice Ginsburg delivered the opinion of the Court, ["This case concerns the obligation of prisoners who claim denial of their Federal rights while incarcerated to Exhaust <u>prison Grievance Procedures</u> before seeking Judicial Relief"]. Also see Porter on page 985 [6] at 578, "The threshold inquiry at issue here: whether resort to a <u>prison grievance process</u> must precede resort to

a court". It is clear to the Plaintiff that the 42 U.S.C. § 1997e is meant for prisoners to exhaust prison grievance procedures where there are procedures set in place, and in the present case at hand the Plaintiff (Cyr.) properly used the prison's grievance procedure for exhaustion. The Defendants also cite "Pridgett v. Correctional Medical Services, 04-cv-11700-MEL (D. Mass. Oct 13, 2005 - Memorandum and Order allowing Defendants Motion to Dismiss)" in which is also attached hereto as **Exh. 5** Pages 1-5; within this Memorandum and Order the dismissal of Pridgetts Complaint for failure to exhaust His Administrative Remedies is explained on pages 1 through 5; Here Pridgett makes six (6) written requests regarding a Religious Diet in which He never utilized the <u>Administrative Grievance Procedure</u> by filing not even one (1) single grievance or grievance appeal. Once again, and unlike Pridgett, the Plaintiff (Cyr.) has utilized the Administrative Grievance Procedure and in fact has properly exhausted all of His claims. In Rasheed v. Commissioner of Correction 446 Mass 463, 476 477 (2006) as stated on Pages 7 and 8 in Defendants Motion to Dismiss (see attached **Exh. 6**), the Court in the continued paragraph on page 8 from page 7 in the last sentence stated that "as applied to Rasheed" The RSRC Handbook "is valid": First Plaintiff notes that His complaint was filed in 2005 before the Rasheed Court Decision in 2006 and shouldn't be held to Rasheed. Secondly, at this time I must say that I the Plaintiff am in the prison's segregation unit (for the past 4 months) where I do not have access to a law clerk and the areas law library is inadequate so I do not have the Rasheed case in its entirely and I argue it based only on Exhibit 6; The Plaintiff addresses four (4) points of what the Rasheed Court stated in exhibit 6: 1). The Rasheed Court in the second sentence states that the Handbook (RSRC) is "in addition"; 2). In the same sentence the

Court states that the Handbook (RSRC) was prepared and established "to serve as a Tool and Reference Source for prison administrators and Inmates."; 3). In the third sentence the Court states The powers of the RSRC, which upon a Religious Request by an Inmate will "Review the requests for Potential Security Concerns and Make Recommendations to the Commissioner for a final determination."; 4). Lastly the Court goes on to say, "By developing the Handbook, the Commissioner not only provided guidelines for prison officials but also provided a mechanism for inmates to seek an exception...". Now, to clarify, The Handbook (RSRC) is clearly "in addition" to (Not a part of) The Prison's Inmate Grievance Procedure (see attached Exh. 3, last paragraph, "In addition"). Secondly, this developed Handbook (RSRC) only serves as a "Tool" and "Reference Source" (see attached Exh. 7, Page 5; extract from the RSRC Handbook, March 2006). Third and in part, the only authority the RSRC has is to make Recommendations (see Exh. 6, Page 7 and 8 "Rashad Court") and (see attached Exh 8, Recommendation letter from RSRC to Commissioner-Defendant Dennehy); the RSRC has no authority to "Approve" or "Deny" inmate requests unlike the prison's grievance policy and procedure which has sole authority to approve or deny prisoner requests for resolution. Nor does the RSRC have an Appeal Process for prisoners as does the Prison's Grievance Policy and Procedure (see attached Exh. 9, 103 CMR 491 - Inmate Grievances, at 491.01 to 491.12). Lastly in Exhibit 6 on page 8 the Rashad Court states one of the reasons why the Handbook (RSRC) was developed ["for inmates to seek an exception"]; as in an exception to, not a requirement before, filing a grievance. At best, the RSRC is an informal procedure in which a prisoner has a choice to seek out only a Recommendation of his request as to filing a Formal Grievance. Furthermore the institution's

Grievance Policy clearly states, "while Inmates are encouraged to pursue informal measures prior to filing a grievance, they shall not be required to do so" (see Exh. 9, Page 3, at 491.07 Informal Resolution) (see also Shaheed Muhammad v. Dicola 373 F.Supp.2d [illegible] (Mass 2005) at 95, FN(2)).

The Defendants request to dismiss all of Plaintiffs claims as written from 1 to 10 (see attached Exh. 10, Page 9, Defendants Motion to Dismiss), however, they don't challenge that Plaintiff failed to exhaust the proper formal Administrative Grievance Procedure, in exhibit 9, to all the claims they request this Court to dismiss. Plaintiff states for the record that He has exhausted all such claims to meet the requirements of the PLRA, 42 § 1997e. As to Defendants Dismissal request, in exhibit 10, Plaintiff exhausted His claims to number 1 and 2 (see original Complaint at 49 and 51), (see also attached Exh. "DD" and Exh. "EE"); Plaintiff exhausted His claims to number 3 (see original Complaint, at 39, 40, and 70), (see also attached Exh. "V" and Exh. "PP"); Plaintiff exhausted His claims to numbers 4, 5, 6, 7, 8, 9, and 10 (see original Complaint, at 58 and 60), (see also attached Exh. "II" and Exh. "JJ")*. Defendants do not challenge Plaintiffs stated exhaustion, rather "admits" to Plaintiff exhausting the prisons administrative Grievance Procedure on such claims (see attached Exh. 11, the "Defendants Answer to Complaint", at 49, 51, 39, 40, 70, 58 and 60).

For the reasons stated above Plaintiff request this Court to dismiss the Defendants Motion to dismiss.

*1). Note: See attached "Exh. GGG" which is the Grievance Appeal "decision by Superintendent" from "Exh. JJ" in original Complaint at paragraph #60. The Appeal Decision is dated May 21, 2005.

Secondly, the Defendants request this court to dismiss Plaintiffs retaliation and Harassment claims; Plaintiff opposes Defendants request. Acts taken against prisoner in retaliation for exercise of Constitutional right can state claim under §1983, even when retaliatory acts do not themselves violate constitutional right (see Thomas v. Hill 963 F.Supp. [illegible] (N.D. [illegible] 1997). Correction officer may not maliciously interfere with inmates permissible religious practices or harass him because of such practices (see Jiminez v Kelly 739 F.Supp. 13[illegible] (W.D.N.Y. 1990). Using the language of 42 U.S.C.A §1983, "Inmate bringing §1983 claim of retaliation for exercise of a constitutional right must produce direct evidence of motivation or, the more probable scenario, allege chronology of events from which retaliation may plausibly be inferred." (see David v. Hill 401 F.Supp. 2d 14[illegible] (S.D. Tex 200[illegible]). To show retaliation claim Plaintiff must prove a chronology of facts from which retaliation can be inferred (see Cain v. Lane 857 F.2d 1139, 114[illegible] N.3 (7th Cir. 198[illegible]). First, the Plaintiff has a 1st and 14th Amendment Constitutional Right to practice His Native American "religion" (Spirituality Culture). His "religious" rights are also governed by the Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C.A §2000cc. Plaintiff states that due to "staff" charges He was Harassed and Retaliated against by the Defendants on several occasions beginning in early February 200[illegible] (see Original Complaint at paragraph 14, 15, 16, 17, 18, 19, 20, 2[illegible], 28, 32, 33, 3[illegible], 40, 41, 42, 43, 44, 6[illegible], 73, 7[illegible], 7[illegible] and 80), (see also attached Exh.'s A, B, C, D, E, F, G, H, N, R, V, W, X, Y, KK, RR, UU, and VV). To the Plaintiff it is clear that He was Harassed and Retaliated against. In support of Plaintiffs claims, Plaintiff states that because of the Defendants actions against Him (in Exh.' A, B, C, D, E, F, G, H, R, V, and Y), five (5) investigations were initiated against

the defendants (see attached Exh. [illegible], [illegible], [illegible], [illegible] and [illegible]). Four of these were investigated by the Internal Affairs office and one was investigated directly from the Department of Correction (DOC) Commissioner's office. From these investigations Plaintiff has just recently received the final outcome in which it [illegible] (see attached Exh. 12).

In furtherance of retaliation and support of Plaintiff's claims of harassment and retaliation, Defendant McLaren, through defendant Rice posted a March [illegible], 200[illegible] memorandum on the wall no more than one foot away from the Programs Building officer's desk which is titled "Native American Room" (see attached Exh. [illegible]), the first sentence states "Since the different staff being assigned to the Programs Building recently, there has been an issue with the Native American Circle Group". Defendant McLaren is referring to Defendants Russo and Robinson as Defendant Bledsoe was already there acting as ~~[illegible]~~ disciplinary officer in the building. Defendant McLaren continues in Exh. [illegible], "Please be advised that during approved times, and the schedule is posted in the Programs Building, Native American inmates should be granted access to the Native American Room as well as the [illegible] there". There are, were two schedule postings, one taped to the outside of the closet door of the Native Indian Area, and the other one posted clearly in the window of the Native Indian Area; being opened from "9:00 am to 11:00 am" and "1:00 pm to closing" Sunday through Friday. [illegible] McLaren emphasizes to staff (Defendants) to abide by the schedule which was always posted. Finally defendant McLaren makes it clear to staff by stating in Exh. [illegible], "It is expected that staff are cognizant that this is a religious [illegible] area". This memo came out on March [illegible], 200[illegible], [illegible] for the next

10 and 11 [illegible] that the Defendant harassed and retaliated against the Plaintiff (see exhibits [illegible], 3, 4 and 7). Ultimately, and regardless of all that [illegible] of the investigation that is still pending [illegible] the Plaintiff's numerous grievances and complaints, Defendant Nelson, instead of working the issues with staff, decided to [illegible] the [illegible] by closing down the nation [illegible] throughout the day [illegible] then prohibiting the staff's right to practice their religion". [illegible] (Circuit [illegible]) [illegible] the Defendants cite "Plaintiff has the substantial burden of proving that "but for" retaliation, he would not have been subjected to the challenged conduct". Up until February [illegible], "due to different staff being assigned to the [illegible] Building", Plaintiff has frequented the nation section worship area for two years faithfully on a daily basis in the mornings and afternoons without any trouble or incident. If it wasn't "but for" Defendants Robinson, [illegible] and [illegible], Plaintiff would not have filed those grievances and complaints and Defendant Nelson would have never closed the nation section area. Plaintiff believes that through the direct evidence above and or the chronology given above that it was [illegible] and retaliated "as plausibly be inferred" by the court (see David v. Hill [illegible] F. Supp. 2d 749 (S.D. Texas 2003). In and throughout the last paragraph on "Page 10" of Defendants' Motion to Dismiss (see attached Exh. 13), the Defendants attempt to mislead the Court; in the fourth sentence Defendants use the term "at his request", suggesting to the court that Plaintiff wanted the nation room and facilities opened during unscheduled times. Plaintiff, through exhibit [illegible] and all other exhibits in this action, have already established his right and

approval of the administration to access the native area and locker during the mornings and afternoons. In the fifth sentence of Exhibit 13, Defendants state that "the prison administration reduced hours of weekday access to religious programs in the Programs Building, including the Native American area and sweatlodge". Coincidentally, the "Reducing" of the hours was implemented 14 days after I filed my last grievance against Defendant Robinson (see Exh. 9) on February 14, 2005. In my [illegible], [illegible] grievance against the Defendant Robinson (see attached Exh. DD), Plaintiff states that the native american area closed Down during the day times on February 28, 2005; the time was not "Reduced" as suggested by Defendants; Nor was the "Reduced" weekday time targeted at any other Religious sect or Denomination other than the Native American area (see attached Exh. 14, Programs schedule). In the sixth sentence of Exhibit 13, Defendants try to mislead the Court into believing that Plaintiff requested "additional Access" to the native area; Plaintiff only requested access to the native area and locker during approved times given from the administration. Surely if Plaintiff made a free own attaining unscheduled access to the Native area and locker, Plaintiff would have been immediately disciplined. In the seventh sentence of Exhibit 13 the Defendants would like the Court to believe that the "actions" of Defendants were mere "miscommunications"; then the Defendants were clearly informed in early February 2004 (see exhibit 6, 2nd Paragraph), and the "Miscommunications" of these stated Defendants continued for a year until February 14, 2005 (see exhibit 4). Plaintiff also points to the fact that, in the same sentence, Defendants admit to their "behavior"

against Plaintiff (see exhibit 13, at [illegible]).

Plaintiff finally state that the Defendants, prior to their motion to Dismiss as well as presently have refused to properly participate in discovery with the Plaintiff (as required by Fed. R. Civ. P. 33, 34, and 37) by not responding to Plaintiff's "Production of Documents Request" and Plaintiff's "Interrogatories and Request for Production of Documents" thereby stalling Plaintiff to move onto the deposition aspect of discovery. However, Plaintiff sent a motion to compel Discovery on August 9, 2006 which was mailed to the court on August 10, 2006 (see attached **Exh.** 15, Motion to Compel Discovery). Plaintiff asserts that through the court compelling discovery from Defendants, Plaintiff will be able to produce additional evidence and proof to further validate the claims of Harassment and Retaliation. Although Plaintiff believes that he provided more than enough satisfactory evidence to the Court to overcome Defendants motion to Dismiss, Plaintiff request the Court to Dismiss Defendants motion to Dismiss on the claims set [illegible] according to the opposition stated above, or in the alternative, Plaintiff request the Court to set aside Defendants motion to Dismiss and grant Plaintiff's motion to compel (Exh. 15) to allow Plaintiff the opportunity to bring all of the facts to the attention of the Court in Defense of Plaintiff's claims and in accordance with Fed. R. Civ. P. 32, 33, 34, 37, and 26.

Plaintiff also request of the Court to allow Plaintiff's opposition to defendants motion to dismiss conspiracy claims the opportunity to add all necessary evidence obtained by the Plaintiff by compelling the defendants to respond to Plaintiff's discovery requests as stated in the previous section above (Fed R.Civ.P 30, 33, 34, 37, and 56). It can be inferred through the above evidence and chronology that a conspiracy in fact took place amongst these defendants. As Defendants cite as well in Landrigan v. City of Warwick 628 F.2d 736 (1st Circuit 1980) stating "In a conspiracy claim under § 1983, 'a Plaintiff must allege and prove both a conspiracy and an actual deprivation of rights'". Plaintiff engaged in his 1st Amendment right for exercise of religion which was further established by the grievance on March 22, 2004 (see Exh. UU) only for Plaintiff to be continually deprived access to the Native Area, Sacred Objects, Artifacts and Ceremony for the next 10 and 11 months (see exhibits V and [illegible]) which ultimately ended up in defendant Maloney closing the Native Area all together only 4 days after Plaintiff's final grievance against defendant Robinson (see and compare Exh. Y to Exh. DD). The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) Provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest" and does so by "the least restrictive means"; Then defendant Maloney completely closed the Native Area during the daytime hours all together and has not offered no defense on record? With the Court ordering the Defendants to produce Discovery requested by the Plaintiff,


Plaintiff will be able to further prove that a conspiracy between these defendants did in fact take place and continues to take place. For these reasons Plaintiff requests the court defendants to produce discovery requested by Plaintiff and to either [illegible] defendants' motion to dismiss on Plaintiff's conspiracy claims or in the alternative set aside Defendants' Motion on these claims until discovery is complete and Plaintiff has opportunity to oppose Defendants' Motion in accordance with Fed. R. Civ. P. 30, 33, 34, 37 & 56.

Finally, defendants request the court to decline federal jurisdiction over Plaintiffs state law claims [illegible] federal claims, defendant has made this argument based on the idea that the court will find that Plaintiff did not exhaust the administrative remedies, and on no other ground. Plaintiff has exhausted the PLRA requirements and therefore request the Court to dismiss defendants motion to dismiss. Furthermore, the Court has discretionary authority to exercise supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. §1367 (see exhibit 1, Page 6, at III. State Law Claims). The Court also has original jurisdiction of any civil action arising from a deprivation of a right secured by the constitution (see 28 U.S.C. § 1343(A)(3)), also (28 U.S.C. §1331). When a Constitutional claim is made under civil rights statute that is of "sufficient substance" to support federal jurisdiction, a District Court has power under jurisdictional statute to consider other claims based on civil rights statute without determining that latter claims standing alone are sufficient to support jurisdiction (see Dougherty v. [illegible], 560 F.2d 160 C.A.3 (N.J.) 1977). Accordingly, Plaintiff request the court to exercise its right of jurisdiction over Plaintiffs federal RLUIPA, 1st and 14th Amendment claims and state law claims, (see exhibit 1, Page 6, at III. State Law Claims), (also M.G.L.A. 127 § 88 - Religious Services, ["an inmate of any prison or other place of confinement shall not be denied free exercise of the Religious Belief ..."], and request that court to dismiss defendants motion to dismiss. In addition Plaintiff states that he is the victim of Religious and Racial Discrimination over which Federal Court can assert Jurisdiction through Plaintiffs 1st and 14th Amendments rights of the U.S. Constitution. "Native Americans" here at M.C.I. Shirley Medium prison, and throughout

the Department of Corrections (D.O.C.) have for years been Discriminated against by having our Spiritual Sacred Regalia Confiscated (see Jarvey v. Dubois U.S.D.C. Civil action No. [illegible] 1996 [illegible] (D. Mass. [illegible], 1996) and or through the denied access of Ceremony Structures (see Trapp v. Dubois 17 Mass. L. Rptr. 575, 2004 WL 3[illegible] (Mass. Super. [illegible])) or Sacred Ceremonial Herbs (see Exh. 8)[1] or being restricted and prohibited from practicing our Religion-Spirituality during the daytime hours (see Exh. III). Further, to add insult to injury, Defendants who allow "European Indians" to construct a Council have denied the Plaintiff to practice Black Indian Spirituality (see Exh. III, attached); which in turn denies an entire people's existence all together. For the purpose of Pendent jurisdiction Plaintiff also cites, [illegible] v. [illegible] E.D. Pa. 1966, 260 F. Supp. 323, [where first count of complaint in action for injunction to prohibit defendants' continued refusal to admit minor plaintiffs and other applicants to charitable school merely because they were Negroes raised substantial federal question, so that federal court had jurisdiction of first count, and second and third counts, which raised state claims, along with first count constituted a single case for a single trial, district court had pendent jurisdiction of second and third counts]. Plaintiff request the court have full Jurisdiction over all of Plaintiff's claims.

[1] In exhibit 8 there are twenty six (26) religious request; twenty (20) of them are from Native Indian Practitioners; Three (3) of the twenty are neither approved or denied while the remaining seventeen (17) have been marked as being denied. One of which is Black Indian spirituality.

Conclusion

Plaintiff request that [illegible] the above foregoing facts that the court [illegible] to produce [illegible] discovery requested by plaintiff.

Respectfully submitted,

Derek Simeon Black wolf Cooper, Pro se.
Derek Simeon Black wolf Cooper, Pro se.
MCI Shirley Medium
P.O. Box 1218 Harvard Road
Shirley, MA. 01464

Date: November 30, 2006

CC: Charles Rolli
File/Archive

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.