UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| DEREK SINCERE BLACK WOLF CRYER, ) Plaintiff ) ) v. ) KATHLEEN M. DENNEHY *et al.* ) Defendants ) ) | ) ) ) ) ) ) ) ) ) | Civil Action No. 05-11289-RCL |

## MEMORANDUM AND ORDER ON THE DEFENDANTS' MOTION TO DISMISS

LINDSAY, District Judge.

Now before the court is a motion under Fed. R. Civ. P. 12(b)(6) filed by Commissioner of Correction Kathleen M. Dennehy; MCI-Shirley Superintendent Michael Thompson; former MCI-Shirley Deputy Superintendent Carol Mici; MCI-Shirley Director of Treatment Gregory McCann; and several other MCI-Shirley officers and former officers[1] (collectively, "defendants") to dismiss the complaint of pro se plaintiff, Derek Sincere Black Wolf Cryer (the "plaintiff"), for failure to state a claim. The plaintiff is an inmate in the custody of the Massachusetts Department of Correction ("DOC"). He is currently housed at MCI-Shirley, a medium security prison. The complaint,[2] brought pursuant to 42 U.S.C. § 1983, alleges violations by the defendants of the

---

[1] MCI-Shirley correction officers Tina Ranno and William Taylor, MCI-Shirley recreation officer Thomas Lavelle, and former MCI-Shirley disciplinary officers Gregory Poladian and Mae Robinson.

[2] The plaintiff filed both a complaint and a supplemental complaint. Although the general rule is that an amended complaint supersedes the original complaint, in this case I treat the complaints together for the purposes of the defendants' motion, as did the defendants. *See Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991) (where plaintiff prisoner appears pro se, "we read his complaint with an extra degree of solicitude").

plaintiff's right to free exercise of religion under the First and Fourteenth Amendments to the United States Constitution; the Religious Land Use and Institutionalized Person's Act, 42 U.S.C. § 2000cc (RLUIPA);[3] the Massachusetts Constitution and Declaration of Rights; Mass. Gen. L. ch. 93, § 102; Mass. Gen. L. ch. 12, § 11I; and Mass. Gen. L. ch. 266, § 127B.

Specifically, the plaintiff alleges that the defendants violated federal and state law when they: (1) changed the weekday hours that he and other inmate members of the Native American Spiritual Awareness Council ("NASAC") had access to the Native room[4] and to a footlocker ("locker") located in the prison's programs building and limited access to the room for spiritual practices to the evening hours; (2) moved Native American books and videos from the Native

---

[3] The original complaint alleged violations of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb and the American Indian Religious Freedom Act, 42 U.S.C. §§ 1996 (AIRFA).  On August 4, 2005, the court entered an order that, *inter alia*, dismissed sua sponte the plaintiff's claims pursuant to RFRA and AIRFA, but noted that the court would consider the plaintiff's claims under Religious Land Use and Institutionalized Person's Act, 42 U.S.C. § 2000cc (RLUIPA).

RLUIPA provides that, as a general rule:

"No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

"(1) is in furtherance of a compelling governmental interest; and

"(2) is the least restrictive means of furthering that compelling governmental interest."

RLUIPA, 42 U.S.C. § 2000cc-1(a).

[4] The complaint refers variously to the Native room, the Native area, and the Native American Spiritual Awareness Council (NASAC) area.  I use these terms interchangeably throughout the course of this Memorandum and Order.

2

room to the prison library; (3) denied the plaintiff permission to enter the Native room to perform a "sacred drumming ceremony" on January 10, 2005 and denied him access to the Native worship area at several other times; (4) denied him access to tobacco for religious practices; (5) denied permission for him to purchase "sacred Native crafts" from native sources; (6) denied permission for him to purchase a "four row choker;" (7) denied permission for him to consume buffalo jerky during Solstices and Equinoxes; (8) refused to designate an outside worship area for the plaintiff's prayerful and religious use; (9) refused to construct a sacred sweat lodge; (10) denied permission for him to engage in sweat lodge, "Pow Wow," and "Giveaway" ceremonies; (11) denied him the religious counsel of clergy members of his faith through visits, phone calls, and the mail; (12) denied permission for him to purchase a personal prayer pipe and Native arts and crafts; and (13) denied him equal opportunity and access to practice Black Indian Spirituality, all in violation of his constitutional and statutory right to free exercise of religion.  The plaintiff also alleges that the defendants harassed and retaliated against him, discriminated against him because of the shade of his skin and the unpopularity of his religion, subjected him to unequal treatment, compared with the treatment of Native practitioners of European descent, and continually interfered coercively, threateningly, and with intimidation and humiliation, with his religious faith and the right to practice that faith.  He seeks declaratory and injunctive relief and damages.

      For the reasons stated herein, and acting on the defendants' motion, I dismiss, without prejudice, for failure to exhaust administrative remedies, so much of the complaint as alleges violations of federal law in connection with the free exercise of religion; dismiss with prejudice so much of the complaint as alleges harassment and retaliation for failure to state a claim; and decline to exercise jurisdiction over the plaintiff's state law claims.

## I.  FACTUAL BACKGROUND

**A.     Allegations Concerning Free Exercise of Religion**

The plaintiff describes himself as an African American Indian and describes his religion as "Black Indian Spirituality" or "African American Native American."  His complaint recounts in detail letters, grievances, and grievance appeals that he submitted to various defendants, beginning in February, 2004, describing what he characterizes as the denial of his legal right to practice his religion by the defendants Robinson, Poladian, Ranno, Lavelle and Taylor.  Essentially, the plaintiff alleges that he was denied access, on an ongoing basis, to the locker which holds religious artifacts inside the Native room.  As the plaintiff acknowledged in his complaint, however, he was advised in writing several times, as early as March and May, 2004, to file his requests concerning access to the locker, personal prayer pipes, ceremonial tobacco, a sweat lodge, and an outside worship area, through the Religious Services Review Committee (RSRC) in accordance with the procedure set forth in the Code of Massachusetts Regulations, 103 CMR 403.10(9),[5] and explained in the inmates' Religious Services Handbook ("Handbook").  This procedure involved submitting to the Director of Treatment -- in this case, the defendant McCann-- an Inmate

---

[5]  The administrative review process for requests concerning religious items requires that an inmate complete an Inmate Religious Services Request From (IRSRF) and submit it to the prison's Superintendent or designee for review and recommendation.  *See* 103 CMR 403.10(9). The RSRC reviews the inmate religious request and forwards a recommendation to the Commissioner for approval.  *Id*.  Although the text of the regulation itself appears to apply only to requests for religious items, the defendant asserts that the Religious Services Handbook ("Handbook") extends this process to requests for religious services as well and treats the two together.  The plaintiff does not draw a distinction between his requests for religious items and his requests for other services.  Because these aspects of the plaintiff's free exercise claim are linked, I treat them together for the purposes of this motion.

Religious Services Request Form (IRSRF), which would then be forwarded to the RSRC. The plaintiff acknowledges in the complaint that this procedure was explained to him several times.

Instead, the plaintiff continued to file grievances and "Request to Staff" forms concerning these matters. In the spring of 2005, the plaintiff filed grievances concerning matters described in the proceeding paragraph as well as other matters, including the hours that the Native room was open; the transfer of Native American books from the room to the library; access to sacred ceremonies, a four row choker and jerky; the plaintiff's inability to make purchases from authenticated Native sources; and the plaintiff's visits with spiritual advisors. On June 20, 2005, following the filing of his complaint on June 6, the plaintiff submitted a "Request to Staff" form to the defendant McCann. The plaintiff requested, as an "African American Indian," access to the Native Indian Area equal to that given to "European Indians" and access to the NASAC area on Thursday, Friday and Saturday nights. This request was denied with the following explanation: "There is 1 Native American group. You are free to participate in that group." The plaintiff submitted similar requests on the proper IRSRFs in November, 2005, which requests were denied as a request for recognition of African American Native American Religion, because the "Department of Correction does not segregate religions based on race." The plaintiff continued to submit grievances to the effect that he had been denied access to spiritual advisors, that the Native American Area had not been opened during mornings or afternoons, and that he had been unable to have his disapproved "religious" mail delivered to him.

**B.      Additional Facts Pertaining to Allegations of Retaliation**

The complaint alleges few facts concerning actual acts of retaliation allegedly committed against the plaintiff, though it does detail numerous letters and grievances filed by him in which he claims that he had been harassed, intimidated, or prevented from attending a sacred ceremony by several of the defendants.  The plaintiff wrote twice to the defendant Dennehy concerning alleged harassment and retaliation in response to his grievances, and he informed Dennehy that he could not properly practice his religion because he did not have access to the Native room during mornings and afternoons.  During the fall of 2005, after filing his complaint, the plaintiff continued to file grievances and write letters accusing various defendants of misconduct aimed at him.

## II.  DISCUSSION

**A.      Standard for Motion to Dismiss**

On a 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all well pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  *Toledo v. Sanchez,* 454 F.3d 24, 30 (1st Cir. 2006); *Cordero-Hernandez v. Hernandez-Ballesteros*, 449 F.3d 240, 244 n. 3 (1st Cir. 2006).  A "formulaic recitation of the elements of a cause of action will not do," however, *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), because "[f]actual allegations must be enough to raise a right to relief above the speculative level [assuming] that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citation and internal quotation omitted).  Furthermore, in ruling on a motion under Rule 12(b)(6), the court must eschew reliance on "bald assertions, unsupportable conclusions, and opprobrious epithets."

*Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 68 (1st Cir. 2004). For present purposes, then, the court must accept as true all well pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. The complaint may not be dismissed unless the plaintiff's allegations fail to state a plausible claim for relief. *Bell Atlantic Corp.*, 127 S. Ct. at 1974. *See Arturet Velez v. R.J. Reynolds Tobacco Co.,* 429 F.3d 10, 13 (1st Cir. 2005) ("allegations of the complaint are generally to be taken as true for purposes of a motion to dismiss, and the complaint should not be dismissed if a claim can plausibly be embraced by those allegations").

**B.      Federal Free Exercise of Religion Claims**

The defendants argue that the plaintiff has failed to exhaust available administrative remedies regarding his free exercise of religion claims, as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a),[6] in particular by failing to follow the RSRC process outlined in the Code of Massachusetts Regulations, 103 CMR 403.10(9) and the Handbook, and that because his complaint contains unexhausted claims, it should be dismissed in its entirety. The plaintiff responds that this separate administrative review procedure is not part of the "set grievance procedure" that he is required to exhaust under the PLRA, and that, in any event, he did meet the exhaustion requirement by filing grievances and appealing from their denials.

---

[6] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), even where the prisoner seeks relief that is not offered through administrative procedures like grievance proceedings. *Booth v. Churner*, 532 U.S. 731, 741 (2001). *See Casanova v. DuBois*, 239 F.3d 142, 147 (1st Cir. 2002) ("Although not jurisdictional, the exhaustion requirement is nonetheless mandatory."). Under § 1997e proper exhaustion is a requirement that "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford v. Ngo*, 126 S. Ct. 2378, 2387-88 (2006). A prisoner may not choose which of the administrative procedures available to him to pursue; proper exhaustion requires that he "complete the administrative review process in accordance with applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007) (internal quotation marks and citation omitted); *see Woodford*, 126 S. Ct. at 2385 ("proper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original))). *See also Booth*, 532 U.S. at 739 (observing that in light of Congress' amendments to § 1997e, which "eliminated both the discretion [of judges] to dispense with administrative exhaustion and the condition that the remedy be 'plain, speedy, and effective' before exhaustion could be required," any administrative process that exists and can provide any

relief is an "available" remedy and must be exhausted (quoting § 1997e as in effect before it was amended in 1996 by Pub. L. 104-134, § 101[(a)][§ 803(d)]).[7]

In this case, there is no question that the plaintiff submitted numerous grievances with respect to his demand for free exercise of religion, and he properly appealed the denials of those grievances. However, as described by the defendants (and documented throughout the voluminous exhibit submitted by the plaintiff), the DOC has both a general inmate grievances policy and a separate administrative review procedure, the RSRC, for consideration of inmate requests concerning religious practices and property.[8] As the plaintiff acknowledges, he was informed several times that he should utilize the RSRC process described in the Handbook by submitting IRSRFs to the defendant McCann. Contrary to his assertion that the RSRC process is only "an informal procedure in which a prisoner has a choice to seek out only a [r]ecommendation of [h]is request as to filing a [f]ormal [g]rievance," in order to properly exhaust his claims, the plaintiff was required to utilize the RSRC administrative review process for requests concerning religious practices and property. *See, e.g.*, *Jones*, 127 S. Ct. at 922-23; *Woodford*, 126 S. Ct. at 2385. He makes no claim to have done so, although as discussed previously, he did submit grievances and requests to staff concerning these issues, and he submitted IRRFs to the wrong person. These IRRFs were returned to him and he was informed that he had to submit them to

---

[7] The 1996 Amendments to 42 U.S.C. § 1997e, Pub. L. 104-134, § 101[(a)][§ 803(d)], among other things, made exhaustion provisions mandatory rather than directory and struck out the former subsection (b), which had established minimum standards for systems for the resolution of grievances.

[8] In *Rasheed v. Commissioner of Corrections*, the Supreme Judicial Court of Massachusetts concluded that in the circumstances of the case before it, the regulation and the Handbook are constitutional and do not violate any applicable statute. 446 Mass. 463, 477 (2006).

the Director of Treatment, as the Superintendent's designee under 103 CMR 403.10(9). When he did follow the proper procedure, after he had already filed his complaint, he did so only insofar as he sought recognition of his "Black Indian Spirituality," in the form of equal access to the existing Native Indian Worship Area to practice religion on Thursdays, Fridays and Saturdays. The plaintiff thus has failed properly administratively to exhaust his free exercise claim. As a result, this claim is dismissed without prejudice.

Citing cases from several circuits, the defendants argue that because the complaint contains an unexhausted claim, it must be dismissed in its entirety. The Supreme Court addressed this issue recently, in ruling in *Jones* that in a typical PLRA suit, which "may combine a wide variety of discrete complaints, about interactions with guards, prison conditions, and generally applicable rules . . . seeking different relief on each claim[,] [t]here is no reason failure to exhaust on one necessarily affects any other." 127 S. Ct. at 924. In prisoner cases, the Court held, "there is no clear reason to depart from the more typical claim-by-claim approach," *id*. at 926, under which "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." *Id*. at 924. Applying this rule, I now turn to the remainder of the plaintiff's claims.

**C.   Retaliation and Harassment**

The defendants make no argument that the plaintiff should have, but did not. exhaust his retaliation claim. Therefore I do not address any exhaustion question with respect to this claim.

In order to prevail on a claim under 42 U.S.C. § 1983 for retaliation for engaging in activities protected by the First Amendment and/or RLUIPA, the plaintiff must show that his

conduct was constitutionally protected, and that the conduct was a motivating factor in some retaliatory action taken against him by the defendants. *Powell v. Alexander*, 391 F.3d 1, 17 (1st Cir. 2004). The conduct at issue here presumably is the demand the plaintiff made on several occasions regarding the making available to him of time, space, artifacts and advisors necessary and appropriate to his religious beliefs and practices.

  The complaint generally is in a format in which the plaintiff asserts in one paragraph that he sought some accommodation for his religious beliefs and practices, followed by a paragraph in which he says he was denied the accommodation. In this manner, the plaintiff alleges that the defendants interfered with his permissible religious practices, harassed him because of those practices and retaliated against him, all in violation of § 1983. The complaint, however, does not differentiate between what the plaintiff describes as interference with his religious beliefs and practices from what he claims is retaliation for his having sought accommodations for these religious beliefs and practices. To state the matter differently, while the complaint alleges conduct on the part of the defendants which the plaintiff says interferes with religious liberty, the complaint does not state clearly (nor can it reasonably be inferred from other allegations of the complaint) that the plaintiff suffered an abridgment of his religious freedom *because* he complained about such abridgment; that is, the complaint does not allege that the defendants, motivated by the plaintiff's demands for indulgences necessary for the exercise of his religion, responded by curtailing his religious freedom. The most generous reading of the complaint will permit only the conclusion that the complaint alleges simply a denial by the defendants of the plaintiff's free exercise rights under the First Amendment - - and not retaliation, as such. While the claimed denial of the plaintiff's free exercise rights itself may be actionable under § 1983 (a matter I do not

now decide), the complaint does not sufficiently allege the causal link between the alleged denial and any retaliatory motive of the defendants. *Cf. Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir. 1980) (inference of retaliation warranted where chronology of events alleged in complaint reveals that plaintiff filed a lawsuit against prison officials complaining of prison conditions, after which he was denied a timely transfer to minimum security, denied permission to consult an outside specialist for back injuries, and harassed by medical staff). I conclude that the plaintiff is unable to make out a claim for retaliation that is distinct from his free exercise claim. The plaintiff's claim of harassment and retaliation in violation of 42 U.S.C. § 1983 is accordingly dismissed.

To the extent that the plaintiff attempts to state a conspiracy claim pursuant to § 1983 by alleging that the defendants McCann, Robinson, Ranno and Poladian conspired to violate his rights, this claim also fails. What is missing from the conspiracy claim is the essential element that the defendants *agreed* with each other to violate the plaintiff's rights. *See Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) ("to state an adequate claim for relief under section 1983, plaintiff must allege and prove both a conspiracy and an actual deprivation of rights" (internal quotation marks and citations omitted)).

### D.     State Law Claims

A federal court may exercise, in its discretion, pendent jurisdiction over state law claims where there exists a "federal claim [of] substance sufficient to confer subject matter jurisdiction on the court." *United Mine Workers v. Gibb*, 383 U.S. 715, 725 (1966). In this case, I have dismissed without prejudice the plaintiff's federal free exercise claims under the First and Fourteenth Amendments and RLUIPA for failure to exhaust administrative remedies, and I have

dismissed the plaintiff's claims of retaliation and harassment in violation of § 1983 for failure to state a claim.  Thus, there remains no federal basis for jurisdiction, and in the absence of a substantial federal claim the court declines to exercise jurisdiction over the plaintiff's state law claims.

### III.  Conclusion

In accordance with the foregoing discussions, the defendants' Motion to Dismiss is hereby GRANTED.  The clerk is directed to enter judgment for the defendant.

SO ORDERED.

    /s/ REGINALD C. LINDSAY
United States District Judge

DATED:     August 22, 2007